J. T. HARNESS ET AL. v. THE STATE OF TEXAS.

No. 2900.

1. **Municipal Corporations.**—No law existed prior to the Act of March 27, 1885 (Sayles' Civil Stats., art. 340b), under which towns and villages incorporated under chapter 11, title 17, Revised Statutes, on acquiring the requisite population, could ac-

cept the provisions of that title in lieu of an existing charter, in the manner provided by article 340, Revised Statutes, and thus become an incorporated city, with all the powers, privileges, and duties given and imposed on such towns and cities as might incorporate under the first chapter of that title.

2. **Same.**—Colorado, the county seat of Mitchell County, became an incorporated town under the law providing for the incorporation of towns and villages containing more than two hundred and less than one thousand inhabitants. The resolution of the town council of Colorado, on the 21st of November, 1882, surrendering the town charter and accepting in lieu thereof all the franchises and powers conferred in title 17, Revised Statutes, was without effect, and its original corporate existence continued.

3. **Same.**—The corporation created for Colorado in March, 1882, limited to its territory as then designated, still exists, and those who live within such limits can, if they desire, have the enlarged powers conferred on cities incorporating under chapter 1, title 17, Revised Statutes, by compliance with the Act of March 27, 1885.

APPEAL from Mitchell. Tried below before Hon. T. C. Conner. The opinion states the case.

*Jones & Martin,* for appellants.—1. The court erred in his conclusions of law in finding that Colorado was not legally incorporated as a city on the 21st day of November, 1882, when by a two-thirds vote of the town council a resolution was passed and duly entered upon the journal of their proceedings, and afterwards duly authenticated and recorded under article 340 of the Revised Statutes, whereby the town charter was repealed and title 17 of the Revised Statutes adopted in lieu thereof. Rev. Stats., art. 340; Act of March 26, 1881, 17th Leg., p. 63; The State v. Dunson, 71 Texas, 70.

2. The court erred in his conclusions of law in finding that Colorado was not incorporated as a city by a petition of fifty voters for an election held on the 13th day of June, 1883, and the order of the county judge made in pursuance thereof declaring its incorporation with a territory of four sections, to-wit, 40, 41, 44, and 45. Gen. Laws 1881, chap. 103, pp. 115, 116; Cool. on Const. Lim., pp. 311, 312, notes; People v. Maynard, 15 Mich., 470.

*Xavier Ryan* and *Charles A. Jennings,* for appellee.—1. The town of Colorado had no power to incorporate as a city on the 21st of November, 1882, by a two-thirds vote of the town council, because there was no law in force at that time permitting such organization. The law authorizing towns and villages so to incorporate was not passed until 1885, three years later. The action of the town council of Colorado was had November 21, 1882. The council by a two-thirds vote of its body passed a resolution incorporating as a city under title 17, Revised Statutes, within the original town limits. A copy of this resolution, signed and attested only by the town clerk and sealed with the corporate seal, was filed for record with the county clerk of Mitchell County on the 19th day of De-

cember, 1882, and recorded January 16, 1882.    Rev. Stats., arts. 340, 340b; Acts 1885, p. 57.

2.    But if it be true that the town of Colorado was properly incorporated as a city on the 21st of November, 1882, by the resolution of the town council of the town of Colorado, such city organization could give no life or vitality to the city incorporation as represented by appellants, nor retain them, or either or any of them, as officers of the original city organization, for the reason that the latter incorporation was illegal and void *ab initio*, in that the corporation so attempted was by the methods adopted by law to create an original act of incorporation of a city or town, wherein and whereby they sought to include, and did include, the territory of a city already organized and duly incorporated under the law, together with additional territory not within the limits of the city so included; and that the election of defendants was as officers of such illegal city incorporation, and not to represent the original city government, in whole or in part, they having been elected by votes inside and outside of the limits of the original city proper; and where defendants as officers were elected wholly inside of the original city limits, they were elected entirely by the voters of a ward, the voters living within the original city limits but outside of such wards having no voice or vote in such elections, as they would have had under the original city government had the same remained intact.    The State v. Dunson, 71 Texas, 65; Buford v. The State, 72 Texas, 182; Largen v. The State, *supra*, 323.

3.    The town of Colorado having been duly incorporated as a town under the general law in 1882, and not having been dissolved as a municipal corporation by any legal process or other method known to the law, the same continued in existence, and is now in existence, notwithstanding said attempted organization in 1883 was in strict conformity to the law.    The State v. Dunson, 71 Texas, 65; Buford v. The State, 72 Texas, 182; Largen v. The State, *supra*, 323.

STAYTON, Chief Justice. — This is a proceeding in the nature of quo warranto, instituted by the State to test the right of the mayor, marshal, clerk, tax assessor, and aldermen of the municipal corporation known as the " City of Colorado" to exercise the powers pertaining to such officers of cities and towns incorporated under title 17, chapter 1, of Revised Statutes.

It appears that on the 11th day of February, 1882, a petition signed by twenty resident voters was presented to the county judge of Mitchell County, praying for an election under chapter 11 of title 17, Revised Statutes, to determine whether Colorado should be incorporated as a town. On the 25th day of February, 1882, the election was held in accordance with the prayer of the petition, and resulted in favor of incorporation. On the 17th day of March, 1882, the county judge made the order re-

quired by article 513, Revised Statutes; whereupon the town proceeded regularly with the election of the officers prescribed by law, to-wit, a mayor, a marshal, and five aldermen. The territory incorporated, as shown by the order of the county judge, included all of section 41, the north half of section 44, and the northwest quarter of section 45.

After the incorporation in the manner above named, it continued to act as an incorporated town until the 21st of November, 1882, at which time at a regular meeting of the town council a resolution was duly offered, and by a two-thirds majority vote of the council duly passed, whereby they surrendered their town charter under the town incorporation, and accepted in lieu thereof all the franchises and powers conferred in title 17, Revised Statutes. This resolution was passed under the power conferred, or supposed to be conferred, by article 340, Revised Statutes. This resolution was duly attested and recorded.

At the time of the passage of this resolution Colorado had a population of over one thousand and less than ten thousand inhabitants. It is admitted that after this action by the council on November 21, 1882, the council assumed to act as the city council of Colorado, under article 340, Revised Statutes, and that it became an incorporated city, if under the law and under article 340 a town incorporated as Colorado was could avail itself of said article 340.

During the time that Colorado acted as an incorporated city under this transformation by the council the boundaries were the same as under the town incorporation.

In May, 1883, the council began to entertain doubts as to the validity of the incorporation as a city, and employed counsel to investigate the matter. The result of the investigation was that the people were induced to incorporate themselves as a city under an act of the Legislature approved July 1, 1881. Thereupon, fifty qualified voters living within the designated territory petitioned for an election as an original act of incorporation. The territory then sought to be incorporated included four sections, to-wit, sections 40, 41, 44, and 45.

This petition was presented to the county judge of Mitchell County, who thereupon ordered the election in accordance with the petition. The election was held on the 13th day of June, 1883, resulting in a majority of the votes for incorporation as a city. The result was duly declared, and on the 3d day of July, 1883, the county judge caused an entry as required by law to be made upon the minutes of the Commissioners Court. The town or city at that time contained over one thousand and less than ten thousand inhabitants.

In February, 1884, the council divided the new city into four wards, and in April following two aldermen were elected from each ward, together with all the other officers authorized to be elected under title 17

of Revised Statutes. The respondents in this suit are the successors of the city officers who were elected in April, 1884.

The court in his conclusion of fact says: "There is no question made but that the incorporation proceedings of 1883 were regular unless rendered void by reason of the existence of a former corporate existence within the same limits, and also that all of the officers now defendants were elected by the votes of the legal voters residing both within and without the limits of the original town incorporation, except the aldermen in the first and second wards, these two being within the original town limits, the voters in each ward voting for the two aldermen elected from such ward, but for no other aldermen."

The court, however, held that there was no law in force prior to the Act of March 27, 1885 (Sayles' Civ. Stats., art. 340b), under which towns and villages incorporated under chapter 11, title 17, Revised Statutes, on acquiring the requisite population, could accept the provisions of that title in lieu of an existing charter, in the manner provided by article 340, Revised Statutes, and thus become an incorporated city, with all the powers, privileges, and duties given or imposed on such towns and cities as might incorporate under the first chapter of that title.

That the town of Colorado became an incorporated town under the law providing for incorporation of towns and villages having more than two hundred and less than one thousand inhabitants is not questioned, and such corporation it remains, unless by steps subsequently taken it has become an incorporated town or city under the law providing for the incorporation of towns and cities having more than one thousand and less than ten thousand inhabitants.

Prior to the amendment of March 27, 1885 (Sayles' Civ. Stats., art. 340b), there was no law which expressly empowered municipal corporations created under chapter 11, title 17, Revised Statutes, to accept in lieu of an existing charter, through its board of aldermen, the provisions of that title applicable to cities and towns having a population of more than one thousand.

It is not believed that article 340, Revised Statutes, conferred such a power on the board of aldermen of such a corporation. That article applies to cities "containing one thousand inhabitants or over;" the power is given to be exercised "by a two-thirds vote of the city council of such city;" and it declares that when the requirements of that article are complied with "all *acts theretofore passed* incorporating such city which may be in force by virtue of any *existing charter* shall be *repealed* from and after the filing of said copy of the proceedings aforesaid."

Why the same power was not given to the board of aldermen of a corporation created under chapter 11 of same title as was done by the amendment of March 27, 1885, is not readily seen, but that it was not is clear.

The amendment last referred to evidences that the Legislature did not understand that such a power was possessed by such "boards of aldermen," for the sole purpose of that amendment was to confer the power. From this it follows that the action of the board of aldermen of November 21, 1882, was without effect, and the original corporate existence given through the proceedings begun on February 11, 1882, continued.

Prior to the amendments of March 26 and April 6, 1881 (Sayles' Civ. Stats., arts. 340, 340a), a city or town having over one thousand inhabitants could not incorporate under an election held upon the petition of not less than fifty residents, in accordance with the provisions of chapter 11.

The purpose of these amendments was to enable unincorporated cities or towns having a population of more than one thousand thus to incorporate; but there is nothing in the entire law which countenances the holding that an existing corporation could be destroyed by such a procedure.

Article 540, Sayles' Civil Statutes, provides a method by which the inhabitants of towns or villages incorporated under chapter 11, title 17, might abolish such corporations, but that was not pursued. Had it been there would have been no objection to the creation of a new corporation, as this was attempted by the proceedings had in June and July, 1883.

The boundaries of the corporation created in March, 1882, embraced eleven hundred and twenty acres of land, while the corporation attempted to be created by the proceedings had in 1883 embraced within the boundaries prescribed twenty-five hundred and sixty acres, and the persons claiming to be a mayor, marshal, clerk, and tax assessor were elected by persons living within that territory. The only officers authorized to be elected by the charter acquired under chapter 11, title 17, were a mayor, marshal, and five aldermen, each of whom should have been elected by the voters living within the corporation created by the proceedings had in March, 1882.

A mayor, marshal, clerk, and assessor and collector were elected by the voters living within the boundaries of the corporation attempted to be created in June and July, 1883, and at the same time eight aldermen were elected in the several wards into which the territory was divided.

These persons can not be recognized as officers of the corporation created in March, 1882, for they were not elected by the persons entitled to vote in that corporation for its officers.

It is true that two of the wards created under the attempted organization in 1883 embraced the territory within the corporation created in March, 1882, but under that charter aldermen were required to be elected by the voters of the entire corporation, while those now claiming to have been elected aldermen within that territory were elected by voters living

within the wards which had been established, and not by the voters at large.

There is much confusion in the statutes providing for the incorporation of cities, towns, and villages, and their revision is required for the public welfare, but the courts have simply to enforce them as they are found.

Municipal corporations can be created only in the manner provided by law, and when created must continue until abolished in some legal method. We see no reason why it should not be provided that a village corporation might give up its corporate existence in the very act of incorporating as a city under the provisions of articles 340 and 340a, Sayles' Civil Statutes, as well as by pursuing the course pointed out in the succeeding article, but the Legislature has not seen proper to permit this to be done.

The corporation created in March, 1882, still exists, and if those who live within that desire to reincorporate and to have the enlarged powers·conferred on cities incorporating under chapter 1, title 17, they may do so by compliance with amendment of March 27, 1885.

The corporation in that case, however, would be limited to its original territory (art. 343, Sayles' Civ. Stats.), unless extended in the manner therein provided.

The questions involved in this case are practically settled by the following cases: Dunson v. The State, 71 Texas, 65; Buford v. The State, 72 Texas, 182; Largen v. The State, *supra,* 323.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered March 18, 1890.