EMANUEL RICHTER, Defendant in Error, *vs.* MARGERY BURDOCK, Plaintiff in Error.

*Opinion filed February 20, 1913.*

1. USURY—*usury which is paid under compulsion may be recovered.* One who voluntarily pays usury cannot compel its repayment to him, but the law is otherwise where the payment is made under compulsion.

2. SAME—*when payment of usury is under compulsion.* Where one gives a judgment note to a money lender for the amount of the loan and an usurious charge, and the note is assigned to an innocent purchaser, who enters judgment on the note, the payment of the judgment must be regarded as a compulsory payment of the usurious charge, and the maker of the note may recover the amount of such charge from the money lender.

3. SAME—*an action at law may be maintained to recover money paid as usury.* The maker of a note who is compelled to pay usury may recover in an action of assumpsit the amount so involuntarily paid, and is not obliged to resort to a proceeding in equity.

4. CONSTITUTIONAL LAW—*when court may refuse to consider constitutionality of statute.* Where a statute has long been treated by the courts as constitutional and important rights have been based thereon, the court may thereafter refuse to consider its constitutionality.

5. SAME—*constitutionality of Municipal Court act, as a whole, cannot now be questioned.* The constitutionality of the Municipal Court act, as a whole, cannot now be questioned upon the ground that it was not properly passed by the legislature. (*City of Chicago* v. *Reeves,* 220 Ill. 274, and *Greenberg* v. *City of Chicago,* 256 id. 213, adhered to.)

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. JOHN D. TURNBAUGH, Judge, presiding.

JOHN W. BURDETTE, for plaintiff in error.

FRED W. REINHARDT, (W. TUDOR APMADOC, of counsel,) for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

This was an action of the fourth class, brought by defendant in error in the municipal court of the city of Chicago to recover for usury, attorney's fees and court costs, alleged to have been involuntarily paid to plaintiff in error by defendant in error.

It appears from the evidence that on July 12, 1911, the plaintiff in error loaned defendant in error $600, for which defendant in error gave his two notes, one for the sum of $500, payable on or before January 15, 1912, and the other for $300, payable ninety-three days after date. Both notes were to draw interest after maturity, but no rate was mentioned in the notes. The notes were in the usual form of judgment notes, and authorized judgment to be entered at any time after date for such amount as was due thereon, together with attorney's fees fixed at $40 in the $500 note and $25 in the $300 note. To secure the payment of the notes defendant in error delivered to plaintiff in error, as collateral, certain shares of stock in the Union Life Insurance Company, and also assigned to her certain royalties which he was to receive from the Charles W. Shonk Company. The notes were afterwards sold by plaintiff in

error, before maturity, to Sam D. Short, who on September 27, 1911, had judgment by confession entered in the municipal court for $325 on the $300 note, $25 being for attorney's fees, and on September 30, 1911, judgment by confession was entered for $540 on the other note, $40 of which was for attorney's fees. An execution was issued and returned no part satisfied, without having been served upon defendant in error. The first information he had of the transfer of the notes and the entry of the judgments was the bringing of garnishment proceedings against the Charles W. Shonk Company to collect royalties accruing to defendant in error. The Shonk Company paid the judgments on October 14, 1911, and deducted the amount from the royalties due defendant in error. Defendant in error brought suit to recover the amount in excess of the principal of the notes which he paid to satisfy the judgments, and he recovered a judgment for $200, to reverse which plaintiff in error has sued a writ of error out of this court.

The grounds urged for reversal are: (1) That the Municipal Court act of the city of Chicago was not legally passed by the legislature, and is therefore invalid; (2) that payment of the judgments was voluntary; (3) that an action at law will not lie to recover usury after it has been paid, and that plaintiff in error should have been allowed interest on the money loaned.

Plaintiff in error on the trial objected to the cause being heard, upon the alleged ground that the Municipal Court act was not passed by the legislature in the manner required by the constitution, and the journals of the house and senate were offered in evidence. This objection is the same as the objection raised in *Greenberg* v. *City of Chicago,* 256 Ill. 213. That was a suit brought by a tax-payer, and we held that the decision in *City of Chicago* v. *Reeves,* 220 Ill. 274, was *res judicata* and a bar to the maintenance of another suit by another tax-payer attacking the validity of the Municipal Court act. Here the objection is

raised by plaintiff in error in her individual capacity and not as a tax-payer.

It is the right and duty of a court to decide, in the first instance, questions of its own jurisdiction when such questions are raised, but it is a novel proceeding to ask a person sitting as a judge of a court to decide that he is not a court and has no title to the office of judge. It would seem the appropriate, if not the only, way that question could be raised would be by an action of *quo warranto* in the name of the People. We are of opinion, however, the question should not now be considered, no matter by whom or how raised. The constitution gave the legislature authority to pass an act for the establishment and organization of a municipal court for the city of Chicago. The act purports to have been passed in the exercise of that constitutional authority, and upon its face bears no indication that its passage was not in compliance with all constitutional requirements. It was signed by the proper officers and published by the proper authority as a valid act of the legislature. It was adopted by vote of the people of the city of Chicago at a general election, and thereafter judges and other officers of the court were elected, the court duly organized, and it has ever since been transacting the business for which it was established. As before stated, in a tax-payer's suit brought to have the act of 1905 declared unconstitutional we held that while it might possibly contain specific provisions that were invalid, the act as a whole was valid. (*City of Chicago* v. *Reeves, supra.*) In the subsequent case of *Greenberg* v. *City of Chicago, supra,* we held the judgment in the *Reeves case* to be a bar to another suit by a tax-payer for the same purpose, although in the later case different grounds were urged against the constitutionality of the law. When statutes have long been treated by the courts as constitutional and important rights have been based thereon, the courts may thereafter refuse to consider their constitutionality. *Home Telephone Co.* v. *People's*

*Telephone Co.* 141 S. W. Rep. (Tenn.) 845; *Allison* v. *Thomas,* 44 Ga. 649; *Bull* v. *Kelley,* 83 Kan. 597.

In *Marshall* v. *Silliman,* 61 Ill. 218, was involved the validity of acts authorizing municipalities to issue bonds in aid of railroads and subscribe for stock of such corporations. The court said, in view of past decisions sustaining the validity of the acts, and the consequences of those decisions upon the millions of dollars of bonds issued under the acts attacked that had gone into the hands of *bona fide* purchasers, it would not consider the question now an open one. The court said: "If the question were a new one we know not to which side our deliberations might incline us, but the highest considerations of justice require us to follow, unhesitatingly, decisions which have drawn after them consequences so important."

In *Rich* v. *City of Chicago,* 59 Ill. 286, the court was asked to declare invalid provisions of a city charter relative to the taking of private property for public use. The court was of opinion that its former decisions upon the question should be overruled, the question being one merely of procedure and no injury would result to anyone, and said: "But courts are controlled by a different principle in regard to past decisions, under and upon the faith of which the community has acted for a series of years, and as to which a change of decision would lead to great public embarrassment and confusion by disturbing the rights of both public and private property."

In *Linck* v. *City of Litchfield,* 141 Ill. 469, the constitutionality of section 54 of article 9 of the Cities and Villages act was raised. The court said: "Said section 54, and the statute of which it forms a part, have now been in force almost twenty years, and during that period most of the cities and villages in the State have adopted said article 9 by passing ordinances to that effect, as provided by said section 54. The validity of such adoption has been uniformly conceded and acted upon, and it has been recog-

nized by this court, either directly or incidentally, in numerous decisions. If, then, the question were originally a doubtful one,—a thing which we are by no means prepared to concede,—it has now become so thoroughly settled adversely to the present contention that it is no longer open to discussion."

In *Koch* v. *Sheppard*, 223 Ill. 172, the court said, in substance, that former decisions which violate no positive rule of law and work no serious detriment to the public interests, and have been followed for a long period of time, will not be overruled.

In the *Reeves case, supra,* this court held that as a whole the Municipal Court act was free from constitutional objections, and it has ever since that time been treated and recognized as a valid law. Millions of dollars of the public moneys have been expended in organizing and maintaining the court and the election of judges therefor. A vast amount of business has been transacted in the court and money and property of great value have changed hands under judgments rendered therein. A very large number of cases disposed of have been reviewed in the Appellate Court and this court, both reviewing courts treating the municipal court, and the act under which it was organized, as valid. We mention only a few : In *McGann* v. *People,* 227 Ill. 567, a *mandamus* was sought on the relation of a deputy clerk of the municipal court to compel the comptroller and treasurer of the city of Chicago to issue and pay a warrant for his salary. The trial court awarded the writ and this court affirmed the judgment. *Galpin* v. *City of Chicago,* 249 Ill. 554, involved the title to and proper distribution of $105,975.98, moneys the principal part of which had been paid to Homer K. Galpin, clerk of the municipal court, by persons convicted in that court and fined for violations of criminal and *quasi* criminal statutes. *People* v. *Olson,* 245 Ill. 288, was an original petition in this court on the relation of Frank P. Sadler for a writ of

*mandamus* commanding the chief justice of the municipal court to assign the relator as an associate judge notwithstanding the term of two years for which he was elected had expired. The relator's claim was that the constitution fixed the term at four years and that the two-year provision in the act was unconstitutional. This court took jurisdiction of and decided the case contrary to the relator. In *Riggs* v. *Jennings,* 248 Ill. 584, it was contended the act was invalid because the title was defective. This contention was overruled and the act sustained. In all these and a vast number of other cases the Municipal Court act has been treated as valid. It is true that after the decision in the *Reeves case* the act was not again attacked, as a whole, until the case of *Greenberg* v. *City of Chicago, supra.* The validity of many particular provisions of it has been raised and determined by this court and some parts of the act as originally adopted were held invalid, but as a whole it has been treated and acted upon as valid. The legislature has also recognized its validity by adopting amendments to it from time to time. In 1907 an act was passed which was almost a complete revision of the act of 1905. That act amended forty-six sections of the original act and added five additional sections. The amended act of 1907 required its submission for approval to the legal voters of the city of Chicago before it became operative. It was so submitted, was approved, and thereafter has been recognized and acted upon as a valid and legal statute. Whatever view we might feel inclined to take of the question now raised if it were not for our previous decisions and the disastrous public consequences that would result from holding the act invalid at this time, we are disposed to hold, and deem it our duty to do so, that the question is not now open for review.

It is contended that the payment of the judgments was voluntary, and that usury voluntarily paid cannot be recovered. The law is well settled in this State that where a

party voluntarily pays usury he cannot compel its re-payment, but where the payment is made under compulsion it may be recovered back. (*Culver* v. *Osborne*, 231 Ill. 104.) It is insisted that the payment of usury was voluntary, first, because the judgments entered on the notes were not entered as required by law, being entered in the abbreviated form used in the municipal court, which this court held in *Stein* v. *Meyers*, 253 Ill. 199, did not comply with the requirement of section 18 of the schedule of the constitution that all court proceedings shall be in the English language, and were therefore invalid, and also that the judgments were entered pursuant to a power voluntarily executed by defendant in error. Defendant in error introduced authenticated copies of the judgments, showing they were written out in full in the English language. It is claimed by plaintiff in error that they were not so written out until long after they were entered, but this does not appear from the record. True, after defendant in error offered authenticated copies, plaintiff in error offered records containing judgments in abbreviated form, but it was not shown that they were not also written out in full when entered.

The notes were sold to and paid for by Short almost immediately after they were given, and there is no proof that Short had any knowledge that they were usurious. Short at once had judgments entered and brought garnishment proceedings against the Shonk Company. It seems that as soon as the judgments were entered Short was repaid by plaintiff in error the money he had given for the notes, but returned it upon payment and satisfaction of the judgments by the Shonk Company. The transaction was peculiar, to say the least, so far as plaintiff in error was concerned, but we find no evidence that Short occupied to defendant in error any position other than a *bona fide* purchaser for value. If such was his position,—and it must be so held under the evidence,—defendant in error could have made no defense against him on the ground of usury.

In *Culver* v. *Osborne, supra,* it was held that where a note was given upon usurious consideration and assigned before maturity to an innocent purchaser, who had no notice of the usury, and by him collected from the maker, the payment is regarded as compulsory and not voluntary, and could be recovered. In this case any defense which defendant in error had as to the payee of the notes was cut off by their transfer to Short for a valuable consideration, before maturity. Payment of the judgments entered on the notes was therefore involuntary on the part of defendant in error, as a payment of the notes before judgment would have been, and it would seem immaterial whether the judgments in the municipal court were valid or not.

It is further contended that an action at law will not lie to recover money paid as usury, but if recovery is had at all it must be by a proceeding in equity. The question does not appear to have been directly presented to this court heretofore. In *Woodworth* v. *Huntoon,* 40 Ill. 131, which was an equitable proceeding for an accounting for usury paid, and other relief, the court said a court of equity would grant the relief, and it might be the maker of the note could maintain an action at law for money had and received. In *Wheaton* v. *Hibbard,* 20 Johns. 290, (11 Am. Dec. 284,) and *Baum* v. *Thoms,* 150 Ind. 378, (65 Am. St. Rep. 368,) it was held the common law action of *indebitatus assumpsit* would lie. (See, also, 29 Cyc. 1049; 29 Am. & Eng. Ency. of Law, 548.) These and other authorities that might be cited in our opinion announce a correct rule, and we are unable to see any reason having a basis upon justice or logic requiring us to hold that resort must be had to equity to recover usury involuntarily paid.

The judgment of the municipal court was in accordance with justice and is supported by authority.

*Judgment affirmed.*