COVINGTON COUNTY *v.* PICKERING.

[85 South. 114, In Banc. No. 21132.]

1. ANIMALS.    *"Dipping" in tick eradication statute, defined.*
    Under chapter 38, Laws 1917, imposing liability on a county for
    loss or permanent injury to animals in the process of dipping
    for the eradication of cattle fever ticks, the word "dipping"
    means "to immerse for a short time in any liquid; to place in
    fluid and withdraw again; the act of dipping or immersing;
    a plunge; a brief bath, as the dip of the oars; a dip in the sea."
    Standard Dictionary, "dip."

2. ANIMALS.    *County not liable for injury by sponging with poisonous
    fluid in lieu of dipping.*
    A county is not liable for the injury to a mare caused by sponging
    and rubbing with a poisonous fluid in lieu of dipping under the
    Tick Eradication Law (Laws 1917, chapter 38), and a peremptory
    instruction should have been given for the county.

3. EVIDENCE.    *Regulations of live stock sanitary board must be proven
    in same manner as municipal ordinances.*
    The rules and regulations of the live stock sanitary board must
    be proven in the same manner as municipal ordinances.

    HOLDEN and STEVENS, JJ., dissenting.

APPEAL from circuit court of Covington county.
HON. W. H. HUGHES, Judge.
Action by B. T. Pickering against Covington county.
Judgment for plaintiff, and defendant appeals. Re-
versed and rendered.

*E. L. Dent,* for appellant.

Is washing the same as dipping to eradicate the cattle tick? The statute says dipping and the Act of 1916, with reference to what rules and regulations the state livestock sanitary board may pass, says that such rules and regulations must be with reference to dipping. In the case of *Abbott* v. *State,* 63 So. 667, this court held: "That courts must look to the statute itself for the legislative intent, and cannot make law by judicial construction." When the legislature said "dip" it certainly did mean "dip," and it was manifest error for the court to charge the jury "that dipping in this state is either dipping by carrying the animal through the vat or by washing the animal off with the same chemicals under the directions of the authorities."

It is apparent that it was the scheme of the legislature to cause all livestock to be dipped in order that animals may be thoroughly and completely saturated and soaked with the chemical mixture so that if a tick should be on any part it would become affected by this mixture, fall off and die. The law itself should settle this point beyond question of doubt. Chapter 38, Laws 1918, says: "or that may be killed or permanently injured in the process of dipping or as a result of such dipping for the eradication of the cattle tick."

Appellee's mare was not dipped, and the board of supervisors did everything required of the county preparatory to dipping; the vat and everything was in good condition and if the mare had been dipped as the law contemplated, she might have been living today and could have raised to her memory that fine blooded mule colt.

I am unable to appreciate what more the county could have done to escape liability unless it can be successfully contended that the county is an absolute insurer of livestock in the presence or hearing of an inspector

on dipping days.　The vat was in perfect condition for safe dipping.　Appellee dipped his cows and none was injured.　Either the inspector Duckworth or appellee should bear the loss of this mare.　If the mixture was too strong Duckworth and his bond is liable.　But on the other hand if appellee rubbed his mare too hard and in the wrong place with this poison it was his mare and he lost her.　In no event and under no circumstances do I believe that the legislature intended to place liability on the already overburdened taxpayer's shoulders upon the facts as detailed by this record.　What was the use requiring the inspector to give bond if the county is liable under any statement of facts and at all and in any event.

I respectfully submit that it affirmatively appears from the record in this case that the judgment against the county, the appellant, has resulted in a miscarriage of justice, and that the cause should be by this court reversed and dismissed, or reversed and remanded for a new trial.

*J. J. Stubbs,* for appellee.

If the instruction set forth in the fourth assignment is not the law under the proven facts and circumstances of this case, then of course, the peremptory instruction should be granted, but we contend with implicit confidence that this instruction properly announced the law in the case at bar, it being established that the washing of the mare was done in lieu of dipping under the rules and regulations of the live stock sanitary board.　It would be a crude law, indeed, if the law itself made no provisions for taking care of the animals not able to go through the vats, and if a provision of this kind was lodged nowhere, this would not be common sense.　It's clear beyond doubt, that no provisions for the disabled animals to go through the vats are made in the law it-

self, and no protection to the owner for not dipping on dip days from criminal prosecution, hence it is perfectly manifest, to leave the taking care of the disabled animals to go through the vats up to the Live Stock Sanitary Board, and that it was the intent and purpose of the legislature for these animals to be taken care of by the Board; that it is the very spirit of the letter of the law, that this power is granted to the Live Stock Sanitary Board, and that said Board has exercised that power and created a rule, by which an animal infested with the tick and not able to go through at the speed vat acting under the said rule so proven, washed appellee's mare with the said chemical with the result that this record shows, and by reason of the same the county became liable to appellee for the market value of his mare and there is no escape therefrom, under the evidence in this case. The court committed no error in the granting of the instruction, nor in overruling the request for peremptory instruction.

Assignment of error No. 3 is a complaint by appellant, that the court should have granted the two instructions refused by the court, one based on the negligence of the inspector and the other on the contributory negligence of appellee. There possibly could be a case, where these instructions would be applicable; but in the case at bar there is not a shadow of evidence that the inspector was negligent, as he washed the mare as directed by the Live Stock Sanitary Board and no negligence is shown. The same can be said about appellant. He washed the mare as commanded by the inspector in charge, but no negligent act of appellee is shown that contributed to the death of his mare. Counsel for appellant says, in his brief that he might have washed or rubbed her too hard. There is not a syllable of evidence that he washed her too hard, or was negligent in any other way. There is no evidence in this case on which

to base the said instruction complained of, hence they were properly refused by the court.

Now recurring to the instruction complained of by appellant, wherein the court said that washing was the same as dipping, in this state, the same being the hopes of appellant to reverse this case. The court did not mean to convey the idea to the jury that the words "dip" and "wash" generally had the same meaning. The idea conveyed in this instruction is, that the Live Stock Sanitary Board, had the power under the law to create a rule whereby under certain circumstances animals could be washed, in lieu, of dipping, that said Board had created that rule and that the liability on the county was the same, when washed, in lieu of dipping. The instruction could mean no more or less than this, and is the correct announcement of the law.

Looking to the entire record, the court below committed no reversible error in the trial of this cause. The jury was properly instructed and the cause submitted and after their deliberation returned a verdict for appellee for two hundred and twenty-five dollars, the actual market value of the mare. Justice was done and the verdict of the jury should not be disturbed.

Since a great many animals in this state have been injured or killed, by washing, spraying or sponging, in lieu of dipping, we think it a matter of public interest for our supreme court to render a written opinion in this case, which will be a future guide for boards of supervisors and litigants throughout the state.

ETHRIDGE, J., delivered the opinion of the court.

J. B. T. Pickering filed suit against the county for the value of a mare which died from being sponged or bathed in a solution alleged to be in lieu of the dipping process required under the rules and regulations of the live stock sanitary board and the laws of this state.

It appears that the county was operating under the tick eradication law, and had built a dipping vat known as the "speed vat" near the residence of the plaintiff which was under the charge of one Duckworth as dipping inspector. It is alleged that the plaintiff was required to dip his mare under said law and regulations, and that he appeared and protested against dipping his mare because she had a colt only eighteen days old, and that it was agreed with the inspector in charge of said vat that plaintiff would wash the mare in a solution prepared by Duckworth in lieu of dipping her in the vat; that the mare was bathed by the plaintiff in the presence of Duckworth in a solution prepared by him, and that within a short time thereafter the mare took a chill or ague, and was bathed with warm water from time to time thereafter until the next day, when the mare died. The plaintiff presented a claim to the board of supervisors for the value of the mare, which the board rejected for the reason that the mare was not dipped in the dipping vat. Suit was thereupon brought for the value of the mare. On the trial, over the objection of the county, Duckworth was permitted to testify that he had authority from the live stock sanitary board's regulations to permit the bathing of the mare in lieu of dipping, the regulations not being offered in evidence, and the county insisting that the regulations must be produced.

The court refused a peremptory instruction for the county, and gave the plaintiff, among others, the following instructions:

"The court charges the jury for the plaintiff that dipping in this state is either dipping by carrying the animal through the vat or by washing the animal off with the same chemicals under the directions of the authorities."

"The court charges the jury for the plaintiff, B. T. Pickering, that if they believe from the evidence beyond

a reasonable doubt that the mare in question was killed or died as a result of dipping or washing off under the directions of the authorities in Covington county, then it is the sworn duty of the jury to find for the plaintiff and to assess the damages in the sum proven by the evidence in the case."

The giving of these instructions for the plaintiff and the refusal of the peremptory for the defendant are assigned for error among others.

Chapter 38, Laws of 1917, constitutes the basis of the plaintiff's suit, and reads as follows:

"Section 1. Be it enacted by the legislature of the state of Mississippi, that any person in any county in this state shall be entitled to recover from such county reasonable compensation for any live stock owned by such person that may have been killed or permanently injured since March 1, 1916, or that may hereafter be killed or permanently injured in the process of dipping or as a result of such dipping for the eradication of the cattle tick, where such dipping was done under the supervision of the board of supervisors or the live stock sanitary board.

"Sec. 2. That any owner of live stock making claim for damages for the death or injury of such live stock, shall first make proof of the amount of his loss or damage to the board of supervisors, and when conclusive proof has been made or submitted to the board and there being no evidence of contributory negligence on the part of the owner, and the board is satisfied that the said owner had suffered such loss, then the board of supervisors shall pay to such owner out of the general county funds, such amount as will compensate him for his loss or damage, but if the board of supervisors shall refuse to pay such claims, or any part of them, the owner shall have the right of action against the county where such damage occurred."

Does the word "dipping," as used in this chapter, mean what the instruction for the plaintiff says it means? In other words, does the word "dipping" mean sponging an animal off with the liquid? The Standard Dictionary defines the word "dipping" as applied to the process here involved, as follows:

"To immerse for a short time in any liquid; to place in a fluid and withdraw again; the act of dipping or immersing; a plunge; a brief bath; as, the dip of the oars; a dip in the sea."

We do not think that the act upon which this suit is founded, above set out, contemplates making the county liable for the process used in lieu of dipping. The plaintiff voluntarily substituted this method for dipping in the vat and himself performed the act of bathing the mare. The proof shows that the process used is a more dangerous process than the dipping in the vat, and the testimony tends to show that rubbing an animal with the fluid is dangerous in proportion to the degree of rubbing used.

When regulations promulgated by the live stock sanitary board are relied on in any suit for any purpose they should be proven like ordinances. *Childs* v. *State,* 16 Ala. App. 392, 78 So. 308.

We think the plaintiff failed to establish liability, and the judgment is reversed, and judgment will be entered here for the county.

*Reversed, and judgment here.*

Holden J., (dissenting).

I dissent from the majority view in this csae for the reason that the construction placed upon the statute is entirely too narrow. The decision of reversal this day in the case of *Covington County* v. *Sullivan,* 85 Co. 116, is based upon the rule of construction announced in

the instant case.   However, the principle upon which both decisions rest is that section 1, chapter 38, Laws 1917, imposes no liability on a county for the loss of or injury to animals in the process of dipping for tick eradication, unless such is inflicted while the animal is being actually dipped or immersed in the vat.

This construction of the act is so narrow as to partially defeat its real purpose and intent. I do not dispute that the word ''dipping'' means an immersion or plunge in a fluid, and that there is a difference between ''immersion'' and ''sprinkling;'' yet the purpose of both is that of cleansing or eradication in one respect or another.

But I cannot agree that the intent of the statute was to confine liability for injury to those cases only where the injury actually occurred in the vat.

The legislature meant to provide that the owner of an animal should recover for an injury received in the ''process of dipping'' under the supervision of the proper authorities of the county.   It is clear to me that, where the fluid is prepared and administered by and under the proper authority, either by dipping the animal in the vat or by pouring the liquid on it, or by sponging it with the liquid, this constitutes ''dipping'' within the meaning of the act.

In the *Sullivan Case, supra,* the owner of the animal was compelled to bring it to the dipping vat, where the authorized person in control of the dipping for the county undertook to carry out ''the process of dipping'' by applying the fluid to the skin of the animal without actually putting it into the dipping vat.   The animal died from the effect of the application of the fluid. ·

To say that the owner cannot recover for his loss under these circumstances is to deny him recovery for a loss occasioned by the authorized dipping authorities when he was complying with the mandate of the law to produce his animal at the dipping vat to be dipped for

tick eradication. The owner must comply with the law in bringing his stock to the dipping vat, and that, too, whether the animal be infected with ticks or not, and regardless of the condition of the animals or the distance to the vat. He cannot object to the dipping. He submits his animal to the authority in control to be dipped in the manner such authority may adopt. The authority in charge of the dipping vat elects to apply the fluid in a slightly different manner from that of driving the animal through the dipping vat, but it is for the accomplishment of the same purpose, the eradication of ticks, and in pursuing this method of dipping the animal is injured. It seems to me that the act intended to impose liability under such circumstances.

I do not think the legislature intended to deny compensation to the owner for a loss by injury in dipping where the owner in good faith has complied with the law by producing and submitting his stock to be dipped by the proper authority at the premises of the dipping vat. I can picture the humble citizen with one family cow that contributes largely to the sustenance of the family, who has to drive his cow several miles on an unpleasant day to the dipping vat. There he submits his animal to the lawful authority in charge of the vat to be dipped under his direction. This officer of the county with sole control of the process of dipping decides to apply the fluid by pouring it upon the animal instead of running it through the vat, which latter process might be more dangerous under some circumstances, and he proceeds to carry out the purpose of the dipping law by an application of the fluid, and the animal dies from the dipping. Under the majority decision this citizen whose property has been, in a certain sense, taken or damaged for public use, must lightly return to his home and family without his cow, and must bear the loss because the lawful authority in charge of the dipping operations

elected to apply the fluid in a somewhat different manner than that of plunging the animal through the vat.

The legislators in dealing with this question undoubtedly intended to protect the stock owners against losses where the dipping is done by the proper authority at the place designated and for the purpose of eradication of ticks. In the enactment and enforcement of drastic laws governing private property I think it is reasonable to say that the legislature intended a liberal application in favor of the rights of the citizen.

STEVENS, J., concurs in this dissent.