HENRY C. WINTER v. PAUL MACK.

194 So. 225
En Banc
Opinion Filed February 23, 1940

*Elmore Cohen,* for Petitioner;

*Coe & Rankin,* for Respondent.

CHAPMAN, J.—On petition for writ of certiorari it is contended in this Court that the Circuit Court of Palm Beach County erred in entering an order overruling and denying a motion to dismiss a bill of complaint on the ground that the same was without equity. The lower court by appropriate order restrained Henry C. Winter, as harbormaster for the port of Palm Beach from levying and collecting fees against the motor vessel "Paddie Halferty," and this order likewise is assigned as error.

Paragraph IV of the bill of complaint is, viz.:

"That the defendant, Henry C. Winter, has performed no services whatsoever for your complainant or his motor vessel 'PADDIE HALFERTY'; that the defendant is levying the aforementioned fee against your complainant and his motor vessel 'PADDIE HALFERTY' on the ground that he is harbormaster for the Port of Palm Beach in Palm Beach County, Florida, whereas, actually in fact, no such office exists as that of harbormaster for the Port of Palm Beach in Palm Beach County, Florida; that the only valid statute creating the office of harbormaster for the various ports of the State of Florida is Section 3907 of the Compiled General Laws of Florida, and provides as follows:

" 'The Governor shall appoint, by and with the advice and consent of the Senate, one harbormaster for each port in the State of Florida, into which have come during the past five years vessels of 500 tons burden and upwards, at the average rate of not less than 250 vessels per year, according to the records of the United States Customs House at or nearest the port for which such appointment shall be made.'

"Your complainant further shows unto the court that the

records of the United States Customs office at West Palm Beach, Florida, said office being the nearest customs office to the said Port of Palm Beach, show that during the past five years vessels of 500 tons burden and upwards have come into the Port of Palm Beach at an average rate of far less than 250 vessels per year, and that therefore the office of harbormaster for the Port of Palm Beach in Palm Beach County, Florida, does not exist by virtue of the afore-mentioned statute.

"Your complainant further shows unto the court that the fee which is being levied against him and against his motor vessel is an illegal fee and that unless the defendant is restrained from levying such fee and submitting his bill for said fee to the customs officials at the said Port of Palm Beach that your complainant will not be allowed clearance on said motor vessel without paying said illegal fee; that should such clearance be withheld your complainant's motor vessel must remain within the Port of Palm Beach and your complainant will suffer irreparable injury in that the perishable commodities now stored as cargo upon the said motor vessel will be deteriorated, damaged and destroyed, and in that his employees awaiting the arrival of his said vessel will suffer from lack of food and supplies."

The prayer of the bill is, viz., that the harbormaster be perpetually restrained from levying harbormaster fees against the vessel "Paddie Halferty" as harbormaster of the Port of Palm Beach and from interfering with said vessel when entering or leaving the Port of Palm Beach.

Section 3902 C. G. L. provides that the Governor shall appoint by and with the consent of the Senate, all harbor-masters required by the several ports of Florida, and they shall hold office for a period of two years. Section 3905 C. G. L. makes it the duty of the master of any vessel

arriving at a port in Florida to report to the harbormaster for a station or a berth at the wharves; and that the harbormaster shall be present at all times and to facilitate vessels in discharging and receiving their cargoes. Section 3906 C. G. L. fixes the compensation of harbormasters at a sum not to exceed the sum of twenty dollars for each vessel, according to the amount and value of the services rendered, and said amount shall be paid to the harbormaster by the master, owner or consignee of vessels coming into said port.

Section 3907 C. G. L. makes it the duty of the Governor of Florida to appoint, by and with the consent of the Senate, one harbormaster for each port in Flroida in which has come during the previous five years vessels of 500 tons burden and upwards; at the average rate of not less than 250 vessels per year, according to the records of the United States Customs House at or nearest the port for which such appointment shall be made.

It will be observed that Sections 3902 to 3906, C. G. L., provide for the appointment of harbormasters for the *several* ports of Florida; require the giving of a bond; authorize the appointment of deputies; prescribe the duties of the harbormaster and deputies, and fix the compensation for such services. Section 3907, *supra,* provides for the appointment of harbormasters for *each* port in the State of Florida in which come on an average of not less than 250 vessels annually during the five-year period previous to the date of appointment and these vessels are required to be each of 500 tons burden and upwards. These requirements are to be determined prior to the appointment by the Governor and Senate from the records of the United States Customs House nearest to the port for which appointment shall be made. Other duties of harbormasters are prescribed

by Sections 3908 to 3916 C. G. L., for certain specified ports provided for by Section 3907 and clearly distinguish the duties of a harbormaster from those provided for by Section 3902, *supra*. In the case of State *ex rel.* Attorney General v. Burns, 38 Fla. 367, 21 So. 290, this Court held that the position of harbormaster was an office and should be filled by appointment by the Governor and confirmed by the Senate.

The lower court was of the opinion that the Governor of Florida was authorized to appoint harbormasters for ports of Florida into which have come, during the past five years, at least 250 vessels, each of 500 tons burden or more, and the bill of complaint alleged that the records of the United States Customs office at West Palm Beach shows that during the past five years vessels of 500 tons burden and more have come into the Port of Palm Beach *at an average rate of far less than 250 vessels* per year and for this reason the Port of Palm Beach in Palm Beach County, does not exist by virtue of the statute, and therefore the office of harbormaster for the Port of Palm Beach does not exist and the fees levied on the vessel "Paddy Halferty" are illegal *ab initio* and the bill of complaint seeking a perpetual injunction against the collection thereof contained equity. The bill of complaint alleges that Henry C. Winter claimed that he was the duly appointed, confirmed and qualified harbormaster of the Port of Palm Beach when he levied the fees on the vessel "Paddy Halferty," and the amount of the fees is not challenged.

The legal effect of the ruling of the lower court in overruling the motion to dismiss the bill of complaint and denying the motion to dissolve the temporary restraining order was to hold that the office of harbormaster of the Port of Palm Beach did not exist, although the defendant below

held the office and was discharging its duties when restrained.

The question for decision here is whether the legal existence of an office can be determined in an equity proceeding, as was undertaken in the lower court, or whether it should be settled in a quo warranto proceeding. It is largely a question of procedure.

In the case of City of Sanford v. State *ex rel.* Preston, 73 Fla. 69, 75 So. 619, a mandamus suit was instituted to require the respondent to return to the relator all the books, records, papers, money, iron safe, and other things belonging to the said office of treasurer and assessor, and restore to the relator the rights, privileges, duties and emoluments thereof. This Court held that quo warranto and not mandamus was the proper remedy to settle the title to said office, and said:

"It is well settled both in England and America that when an office is already filled by an actual incumbent, exercising the functions of the office *de facto* and under color of right, mandamus will not lie to compel the admission of another claimant, or to determine the disputed question of title. In all such cases the party aggrieved, who seeks an adjudication upon his alleged title and right of possession to the office, will be left to assert his rights by the aid of an information in the nature of a *quo warranto,* which is the only efficacious and specific remedy to determine the questions in dispute.' High's Extraordinary Legal Remedies (3rd ed.), Sec. 49, and citations; Heard's Shortt on Information's, Mandamus & Prohibition,* 290, *et seq.,* and citations; 2 Dill. Mun. Corp. (3rd ed.), Sec. 892 and citations."

In the case of MacDonald v. Rehrer, 22 Fla. 198, a bill in equity was filed to test the legal sufficiency of the

organization of the Town of Eustis and alleged that the officers thereof were not lawfully elected and the lower court restrained the defendants from entering upon the duties as officers of the Town of Eustis. This Court held that equity was without jurisdiction to determine these questions, and said:

"It is said in High on Injunctions, Sec. 1235, 'that courts of equity do not entertain jurisdiction over corporate elections for the purpose of determining questions pertaining to the right or title to corporate offices since such questions are properly cognizable only in courts of law, the appropriate remedy being by proceedings at law in the nature of *quo warranto*. Nor is the fact that relief is claimed upon the ground of fraud sufficient to warrant a departure from the rule, or to justify a court in such case in granting relief by injunction.' Again in Sec. 1261 the author says: 'Equity is averse to interference by injunction with the formation of local governments or municipalities in accordance with law. And where proceedings are being had under the laws of a State for the incorporation of a village, property owners within the proposed village limit will not be permitted to enjoin such organization because the territory in question does not contain the requisite population, or because complainants would thereby be subject to burdens of local government largely disproportionate to the benefits accruing therefrom, or upon the ground of informality in the proceedings.' 'And a bill for injunction cannot be maintained to have declared null and void proceedings for the incorporation of a village, under an Act of the Legislature for the incorporation of villages, the appropriate remedy in such case being by proceedings in the nature of a *quo warranto*.' "

In Swoope v. City of New Smyrna, 98 Fla. 1082, 125 So.

.371, a bill in chancery was filed to coerce the delivery to Matthews, who had been recently appointed clerk and auditor, the books, records, papers, and other property pertaining to the office of City Auditor and Clerk of the City of New Smyrna, and alleging that the defendant Fuller refused to deliver the same to Matthews. The bill sought to restrain Fuller from acting as clerk and auditor of said city. The lower court granted the restraining order and an appeal was perfected to this Court. It was held that courts of equity do not entertain jurisdiction over corporate electors for the purpose of determining the title or right to corporate offices, as such questions are properly cognizable only in a court of law in the nature of a quo warranto. Courts of equity, in the absence of a statute or some ground of equitable jurisdiction, cannot assume jurisdiction and grant relief.

The rule is well settled in Florida that quo warranto is the proper remedy to test the right of a person to hold an office or franchise or exercise some right or privilege, the peculiar powers of which are derived from the State. See *Ex parte* Smith, 96 Fla. 512, 118 So. 306; State *ex rel.* Davis v. Clarke, 96 Fla. 518, 118 So. 308; State *ex rel.* Merrill v. Gerow, 79 Fla. 804, 85 So. 114; State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 So. 929; Gentry-Futch Co. v. Gentry, 90 Fla. 595, 106 So. 473; McSween v. State Live Stock Sanitary Board, 97 Fla. 750, 122 So. 239; State *ex rel.* Johnson v. City of Sarasota, 92 Fla. 563, 109 So. 473; State *ex rel.* Smith v. Anderson, 26 Fla. 240, 8 So. 1; State v. Gleason, 12 Fla. 190.

A franchise has been defined as a special privilege conferred by the government upon individuals which does not belong to the citizens of the country as a common right, and when a franchise is accepted, it becomes a contract irre-

vocable unless the right to invoke is expressly reserved and is entitled to the same protection under constitutional guaranties as other property. See 22 R. C. L., page 667, par. 8.

The authorities are in conflict on the question of whether or not quo warranto lies to determine the legal existence of an office where it is contended that the law creating the office is unconstitutional or that the office has been abolished or that the court, district or municipality of which defendant or respondent claims to be an officer was not legally created or organized, or has been legally terminated or abolished. See 51 C. J., page 317, par. 13-b; 22 R. C. L., pages 663-4, par. 5.

In State *ex rel.* Garrett v. Torbert, 200 Ala. 663, 77 So. 37, that court had before it the question of whether or not a county court existed in the County of Hale in the State of Alabama by virtue of the Acts of 1915. The Legislature of 1915 appointed a committee to sit during recess to prepare and adopt bills for the revision of the judicial system of the State of Alabama. The committee reported a number of bills which were enacted by the Legislature and the question arose as to whether or not one of the bills enacted repealed the Acts creating the County Court of Hale County. The Supreme Court of Alabama held that this question could be determined by *quo warranto.*

In Richter v. Burdock, 257 Ill. 410, 100 N. E. 1063, during the progress of the trial of a case in the Municipal Court of the City of Chicago, an objection to the case being further tried was made on the ground that the Act creating the Municipal Court was not passed by the Legislature of the State of Illinois in the manner required by the Constitution, and the Journals of the House and Senate were offered in evidence. It was held that the appropriate, if not the

only, way that the legal existence of the Municipal Court of the City of Chicago could be raised was by quo warranto. The rule adopted in the case of Hurd v. People *ex rel.* Hanberg, 221 Ill. 398, 77 N. E. 443, was followed. This is also the Texas rule. See Harness v. State, 76 Tex. 566, 13 S. W. 535.

It seems clear that quo warranto lies to determine the legal existence of the office of harbormaster of the Port of Palm Beach and not a proceeding in equity. It was error on the part of the lower court to enter an order overruling the motion to dismiss the bill of complaint on the ground that the same was without equity. The order appealed from is reversed for further proceedings in the lower court not inconsistent with this opinion.

It is so ordered.

TERRELL, C. J., WHITFIELD and BUFORD, J. J., concur.

BROWN and THOMAS, J. J., dissent.

WHITFIELD, J. (concurring).—Where, as in this case, the Governor is by statute authorized to appoint harbormasters for ports of Florida into which have come during previous years a stated number of vessels of stated ton burdens or more, and the Governor appoints and commissions a harbormaster for a Florida port and such appointee has exercised the official duties and functions of harbormaster at such port, it must be assumed that the Governor appointed the harbormaster in such port after determining that he had authority to do so under the law, and such person so appointed and commissioned should be regarded as having *prima facie* the right to exercise the duties and functions of harbormaster as contemplated by the law and by the commission issued to him by the Governor, and such duties and functions so performed should be recognized as being *prima facie* valid until the contrary is duly established in pro-

ceedings brought by the Attorney General, there being no one claiming to have a conflicting appointment and commission by the Governor.

Brown, J. (dissenting).—It appears to me that there is no adequate remedy at law in this case, and that the court below was correct in denying the motion to dismiss the bill. Furthermore, I think a court of equity has power to determine the legal existence of an office in a csae of this kind. See 21 C. J. 50; Sections 5446, 5447 C. G. L.; McSween v. State Live Stock Sanitary Board, 97 Fla. 749, 122 So. 244.