243 So.2d 147 (1970)
STATE of Florida On the Relation of Richard A. PETTIGREW and Jerry Thomas, Relators,
v.
Claude R. KIRK et al., Respondents.
No. 40534.
Supreme Court of Florida.
December 21, 1970.
*148 Talbot D'Alemberte, Miami, for relators.
Leo Foster, of Parker, Foster & Madigan, Tallahassee, for Claude R. Kirk, Governor.
Robert L. Shevin and Stuart Simon, Miami, for Tom Adams, as Secretary of the State of Florida.
Jesse F. Warren, Jr., Tallahassee, for Board of Business Regulation, respondents.
BOYD, Justice.
This cause is before us on petition of Richard Pettigrew, as Speaker of the Florida *149 House of Representatives and as a citizen and taxpayer of the State of Florida, and Jerry Thomas, as President of the Florida Senate, taxpayer and citizen of Florida, seeking issuance of a writ of quo warranto to prevent the Honorable Claude R. Kirk, Jr., as Governor, from appointing additional circuit judges whose offices are created by the constitutional provisions of Section 6, Article V, which requires one circuit court judge for each 50,000 population or major fraction thereof. The suit seeks to prevent the issuance of commissions for such appointees by the Honorable Tom Adams as Secretary of State. The suit further attempts to prevent Thomas D. Wood, Charles W. Rex, Jr., Eugene M. Toll, Roger P. Doyle, C. Cheshull Harrison, Jr., as and constituting the Board of Business Regulation of Florida, from issuing alcoholic beverage licenses to applicants based on increases of population determined by the 1970 Federal Census.
There is no allegation that any of the respondents are exercising or attempting to exercise any authority contrary to law which could constitute a basis for issuance of a writ of quo warranto.[1] In the introduction of relator's brief is shown the following language:
"The action seeks to prevent a threatened exercise of power by the executive branch in the appointment of additional Circuit Judges and issuance of additional beverage licenses immediately on certification of the 1970 census. The relators are asserting a controlling provision of the Florida Constitution, specifically Article X, Section 8, which states:
`Section 8. Census
`(a) Each decennial census of the state taken by the United States shall be an official census of the state.
`(b) Each decennial census, for the purpose of classifications based upon population, shall become effective on the thirtieth day after the final adjournment of the regular session of the legislature convened next after certification of the census.'"
It is obvious that relators seek to enjoin the respondents from performing certain official acts which will vitally affect the public interest of the State. Although quo warranto is not the proper remedy, we are of the view that since all the parties have appeared before the Court and argued the questions involved we should exercise our jurisdiction under the all writ section.[2]
First, relators admit that subsection (2), § 6 of Article V of the Florida Constitution of 1968 requires that there shall be one circuit court judge for each 50,000 population based upon the last census authorized by law. They further admit said provision to be self-executing to the extent there is no authority in the Legislature to prevent the appointment and qualification of such judges.[3]
Relators insist that although the Court held in Gray v. Bryant, supra, that the Governor in office upon official certification of the 1960 Census could make the appointments and commissions could be issued forthwith that the law had now been changed. They cite § 8(a) of Article X, Florida Constitution, which provides the Federal Census will be the official state census and further cite § 8(b) of Article X *150 which provides that powers and authority created under population acts shall not become operative until 30 days after the adjournment of the next regular session of the Legislature after certification of the census. Relators urge upon us the view that no new circuit judges can be appointed until 30 days after adjournment of the 1971 general session of the Florida Legislature.
Relators insist that since the incumbent Governor Claude R. Kirk, Jr., will be succeeded in office on January 5, 1971, that if he should appoint new circuit judges without proper constitutional authority, the exercise, or attempted exercise, of jurisdiction could become highly detrimental to the public interest. We agree the question merits determination by this Court. We are mindful of constitutional limitations of courts to interfere with acts of the executive and legislative branches of the government when acting under color of law. We would observe here that respondent, Honorable Claude R. Kirk, Jr., sought an advisory opinion of this Court on the same question constituting a part of the question here.[4] In that proceeding we permitted all aspects of the matters to be argued as in an adversary proceeding. We held that under authority of Gray v. Bryant, supra, upon official certification of the Federal Census showing the population of Florida and determining the number of persons in each judicial circuit the Governor in office at that time could fill the judgeships then created by the automatic provisions of subsection (1) of § 6, Article V, supra. Since we issued our advisory opinion there has been no change in the fundamental law and we find this question is now settled.
We feel subsection 8(b) of Article X does not apply to the creation of new circuit judgeships because the Legislature cannot materially increase or decrease the total number of judges by modifying geographic boundaries of judicial circuits. This is not true of the question here presented concerning issuance of alcoholic beverage licenses.
Florida Statutes § 561.20, F.S.A. provides that in the unincorporated areas of counties there can be only one liquor license for each 2,500 persons. The Legislature enacted this provision of law and has the authority to modify it. In the adoption of section 8(b) of Article X, we feel the people of Florida provided that the Legislature should have an opportunity to examine the new Federal Census and to enact any new legislation required to protect the public interest before the issuance of new licenses. It might well be determined that one license would be authorized for an amount of residents greater or less than 2,500. Because the Legislature has the authority to revise all population acts or to enact new ones at the next regular session, we feel the constitutional provisions of Section 8(b) of Article X apply.
Quo Warranto is not the appropriate remedy here, but in view of the urgency and great public interest in this cause, we are constrained to treat the petition before us as a petition for writ of prohibition. We have jurisdiction under Article V, Section 4(2):
"The supreme court may issue * * * writs of prohibition to commissions established by law, * * * when questions are involved upon which a direct appeal to the supreme court is allowed as a matter of right."
Respondents appeared voluntarily and argued both the jurisdiction and merits of this cause. Therefore, we dispense with the issuance of a rule nisi and herewith issue the peremptory writ of prohibition directed to the respondents Thomas D. Wood, Charles W. Rex, Jr., Eugene M. Toll, Roger P. Doyle, C. Cheshull Harrison, Jr., as and constituting the Board of Business Regulation, prohibiting them from *151 issuing new alcoholic beverage licenses based upon population increases reflected by the 1970 Federal Census until 30 days after adjournment of the 1971 regular session of the Florida Legislature. As to other respondents, we hold that the petition does not state a cause of action for the reasons stated above and it is, therefore, denied.
It is so ordered.
ROBERTS, DREW and ADKINS, JJ., concur.
McCAIN, J., concurring in part and dissenting in part with opinion.
ERVIN, C.J., dissenting in part and concurring in part with opinion.
DEKLE, Circuit Judge, concurs with ERVIN, C.J.
McCAIN, Justice (concurring in part and dissenting in part).
In respect to the issue of the appointment of judges by the Governor, whoever he may be, when certification is received, I agree that the appointments are then available. However, in respect to the issue of the beverage licenses, it is my determination that we have no jurisdiction inasmuch as the director has not been made a party respondent to the suit. He is the person directly responsible for the issuance of the license, and those individuals named as respondents constitute only an appellate board. Therefore, there is no justiciable issue because no attempt has been made to issue a license and the director has not been made a party to the suit.
Furthermore, I would dissent on the issue of the licenses because the legislature has already set the standards for issuance of the licenses, i.e., one license per 2,500 people or a major fraction thereof, in most instances. Therefore, when the official census on counties is certified from Washington, then the present director may proceed to issue licenses accordingly. I cannot construe our present Constitution as reserving unto the Legislature the right to review singularly population in respect to a determination of beverage licenses.
ERVIN, Chief Justice (dissenting in part and concurring in part):
Two questions are presented in this case: First, does this Court have jurisdiction to entertain an extraordinary original writ (quo warranto or mandamus or prohibition) to implement the contentions of Petitioners, the President of the Florida Senate and the Speaker of the House of Representatives, that Section 8 of Article X of the 1968 Constitution postpones the effectiveness of the 1970 Federal decennial census in Florida until thirty days after the final adjournment of the 1971 regular session of the Florida Legislature insofar as population classifications in Florida are concerned; and second, does Section 8 of Article X of the 1968 Constitution operate to temporarily postpone the exercise of constitutional and statutory powers of the respondent state officers, i.e., the Governor and the Board members of the Department of Business Regulations, until the expiration of the stated period in Section 8 of Article X, respectively, (1) to appoint additional circuit judges as prescribed in Section 6(2), Article V, State Constitution, pursuant to the 1970 Federal decennial census population figures and (2), to issue alcoholic beverage licenses under F.S. section 561.20 F.S.A., pursuant to such census.
I believe both questions must be answered in the affirmative.
As to the first question, I note that Article V, Section 4(2) of the State Constitution provides:
"The supreme court may issue writs of mandamus and quo warranto when a state officer, board, commission, or other agency authorized to represent the public generally, or a member of any such board, commission, or other agency, is *152 named as respondent, and writs of prohibition to commissions established by law * * * when questions are involved upon which a direct appeal to the supreme court is allowed as a matter of right."
"The supreme court may issue all writs necessary or proper to the complete exercise of its jurisdiction." (E.S.)
This Court, in Winter v. Mack (1940), 142 Fla. 1, 194 So. 225, said:
"The rule is well settled in Florida that quo warranto is the proper remedy to test the right of a person to hold an office or franchise or exercise some right or privilege, the peculiar powers of which are derived from the State." (Emphasis supplied.)
This issue was also considered by the Supreme Court of Florida in State ex rel. Ervin v. Jacksonville Expressway Authority (1962), 139 So.2d 135. In that case, the Attorney General questioned the Authority's power to condemn certain types of easements. Although it had adopted a resolution announcing its intention to do so, the Authority had not commenced condemnation proceedings. An original information in quo warranto was filed and this Court held that proper procedure, saying:
"Jurisdiction to entertain an original proceeding in quo warranto stems from Article V, Section 4, Florida Constitution, F.S.A. * * * It is a proper function of the Attorney General, in the interest of the public, to test the exercise, or threatened exercise of power by such a corporate state agency through the process of a quo warranto proceeding." (Emphasis supplied.)
This Court has several times held that a misconceived extraordinary writ remedy may be treated in another category invoking our jurisdiction. See Marshall v. Bacon (Fla.), 97 So.2d 252; Diamond Berk Ins. Agency, Inc., v. Goldstein, Inc. (Fla.), 100 So.2d 420, and Harper v. State (Fla.), 172 So.2d 454. Therefore, even if the remedy in the nature of quo warranto applied for is improper, mandamus or prohibition to restrain the premature exercise of the claimed authority by the Governor or the Department of Business Regulations would be available under Section 4(2), Article V.
Our decision in Couse v. Canal Authority (Fla.), 209 So.2d 865, construed Section 4 of Article V to mean that the "all writs" authority encompasses power for this Court in its discretion to entertain originally certain controversies involving certain public officers, although no proceedings below have been instituted or appeals taken.
In my dissent in State ex rel. Carter v. Wigginton (Fla.), 221 So.2d 409, I pointed out the anachronistic uselessness of trying to make fine distinctions between archaic extraordinary writs in modern practice, since under "all writs" it seems only necessary to file a petition requesting the Supreme Court to exercise its discretion to take original jurisdiction in those special instances where the Constitution indicates the Court may exercise extraordinary jurisdiction rather than the petitioner having to proceed first in the lower courts and then proceed to the Supreme Court through the appellate process.
Here, there is obviously and directly involved a construction of at least two state constitutional provisions, i.e., Section 6(1) (2), Article V, and Section 8, Article X. And the principal issue is one of unusual and extraordinary importance bearing upon the division of constitutional duties of two coordinate branches of state government, i.e., the executive and the legislative, needing resolution at an early date to avoid unseemly and untimely confusion. This exceptional situation appears to be one where we should exercise our discretion to entertain originally the Petition for the relief sought.
The Governor is named as a respondent herein. He is not excepted from the third paragraph of Section 4(2), Article V, relating *153 to this Court's extraordinary writ jurisdiction. Compare the recent change in attitude of this Court relative judicial intervention in the heretofore considered sacrosanct area of authority of the Governor to decline to countersign a state warrant for an official's salary in Slaughter v. Dickinson (Fla.), 226 So.2d 97 (1969) as contrasted with the view in State ex rel. Axleroad v. Cone, 137 Fla. 496, 188 So. 93 (1939).
I see no objection to making only the Department of Business Regulations the respondent rather than the State Beverage Department, insofar as the issuance of beverage licenses on population bases is concerned, since the Department is the agency head and policy making authority over the State Beverage Department. See F.S. section 20.16, F.S.A., particularly subsection (8). This involved a type three transfer under the reorganization act. A reading of F.S. section 20.06(3), F.S.A., discloses the Department of Business Regulations has such statutory control of the subject matter involved in this litigation for it to be named the proper respondent.
Passing now to the second question, I agree with the majority's conclusion that issuance of beverage licenses under the new Federal Census figures as contemplated in F.S. section 561.20, F.S.A., must be postponed until the Legislature can review that subject pursuant to Section 8, Article X. However, I am unable to understand the distinction  or dichotomy between the application of said Section 8 to the issuance of beverage licenses, but not to the subject of the appointment of additional circuit judges.
Article V, Section 6(1) and (2) (adopted in 1956 as an amendment to the 1885 const.), provide:
"(1) Judicial Circuits. The legislature may establish not more than twenty (20) judicial circuits, each composed of a county or contiguous counties and of not less than fifty thousand (50,000) inhabitants, according to the last census authorized by law, except that the county of Monroe shall constitute one of the circuits; provided, however, there shall be no reduction in the number of circuit judges residing in any county formerly a part of a judicial circuit, which circuit is hereafter created, divided, changed or revised.

"(2) Circuit Judges. The legislature shall provide for one circuit judge in each circuit for each fifty thousand inhabitants or major fraction thereof according to the last census authorized by law. In circuits having more than one judge the legislature may designate the place of residence of any such additional judge or judges." (Emphasis supplied)
This Court examined section 6(2) in 1960 in Gray v. Bryant (Fla. 1960), 125 So.2d 846, and found it to be self-executing. The Court said:
"This section does not establish either a minimum or maximum, but rather establishes an inflexible rule which, when applied to the figures revealed by censuses taken from time to time, determines the number of such judges. The section gives the legislature no discretion in determining the number of such judges or offices." (Gray, supra, at 851.)
In 1968, however, the people of the State of Florida adopted a new constitution which contained a new section, Section 8, Article X, reading as follows:
"Section 8. Census.
(a) Each decennial census of the state taken by the United States shall be an official census of the state.
"(b) Each decennial census, for the purpose of classifications based upon population, shall become effective on the thirtieth day after the final adjournment of the regular session of the legislature convened next after certification of the census."
This provision provides an effective date for the "purpose of classifications based *154 upon population," determined by the Federal decennial census. Both the constitutional provision controlling the number of circuit judges and the composition of judicial circuits and the statute limiting the number of liquor licenses fit into the category of "classifications based upon population." There are no exceptions to the operation of Section 8, Article X.[1] All classifications based upon population are not subjected to new Federal decennial census population figures until they become effective thirty days after the regular legislative session.
It was held in Gray v. Bryant, supra, that immediately upon the Federal decennial census being certified gubernatorial appointments of additional circuit judges to existing judicial circuits were automatic without intervening opportunity in advance for the Legislature to exercise its authority under Section 6, Article V, to reconstitute to any degree the nineteen judicial circuits, "each composed of * * * not less than fifty thousand inhabitants, according to the last census authorized by law" or for the legislature to "designate the place of residence of any such additional judge or judges" in circuits having more than one judge.
Mr. Justice Terrell in his dissent in Gray v. Bryant, supra, gave several cogent reasons why the Legislature should be afforded opportunity in advance of gubernatorial appointments of additional circuit judges to legislate within the latitude permitted by Section 6 of Article V. He said:
"* * * To hold that a population certificate out of Washington may ignore the prerogative of the legislature so given and create twenty additional circuit judges with the additional burden to the taxpayers without a word from the legislature is without precedent or authority in my judgment. * * *
"* * * Its function [Section 6(2), Article V] is initiated with the declaration, `the legislature shall provide for one circuit judge in each circuit for each fifty thousand inhabitants or major fraction thereof according to the last census authorized by law.' It concludes with the injunction: `In circuits having more than one judge the legislature may designate the place of residence of any such additional judge or judges.'
"* * * If there is anyone on this court who does not believe that the right of the `legislature to designate the place of residence of any additional judge or judges in a circuit' having more than one, let him inquire of the legislators or their constituents having business with the court. [E.S.]
"* * * It is proposed here to add from one to five circuit judges to ten of the sixteen circuits in the state. This will completely change the judicial picture. In doing this, it may become necessary or expedient in the discretion of the legislature to remodel, change or alter the boundaries or other aspects of some or all the circuits which the legislature has the power to do. There would certainly be instances in which the legislature would want to designate the residence of the new judges which they are at liberty to do under the Constitution. [E.S.]
"In clothing the legislature with thise powers, Section 6(2), Article V of the Constitution, speaks in the imperative. Like all population laws, it is ambulatory and must be so construed because judicial office cannot be created until the contingency on which it is based arises and the time to designate the residence of the judge matures. * * *" (125 So.2d at 865-866.)
*155 It is noted that under Section 6(1) of Article V once gubernatorial appointments of additional circuit judges are made, "there shall be no reduction in the number of circuit judges residing in any county formerly a part of a judicial circuit, which circuit is hereafter created, divided, changed or revised." It follows, of course, that if such appointments to existing judicial circuits are made immediately after certification of new overall Federal decennial census figures prior to the Legislature having opportunity to revise judicial circuits, its ability to effectively do so will be hampered by the prior appointments to existing circuits and the county residences of the newly appointed judge or judges in such circuits.
Prior to the adoption of Section 8, Article X of the new Constitution, it was held in Gray v. Bryant there could be no interim period for advance action of the Legislature to make changes in judicial circuits and designation of places of residence of additional circuit judges. Therefore, the automatic self-executing census figures were implementable solely by gubernatorial appointments to then existing judicial circuits. Section 8, Article X changed this situation. It modified Gray v. Bryant by prescribing an interim period before the Federal census becomes effective during which the Legislature could act. Population classifications for all purposes as determined by new Federal decennial censuses and as prescribed in the Constitution or in state laws are held in abeyance from immediate self-execution by Section 8, Article X until the Legislature has interim opportunity within the latitudes permitted the Legislature to review the impact of such censuses and determine if modifications or revisions are in order in any particular before the executive branch proceeds to execute its authority under the new population figures.
In sum, the answer to the second question is: Section 8, Article X affords the Legislature an interim opportunity to review and modify within constitutional limitations any existing population classifications in the light of the knowledge of new overall Federal decennial census figures.
As applied to the issues here, the Legislature is afforded an opportunity to make changes in the alcoholic beverage laws insofar as alcoholic beverage licenses are issued according to population classifications. Insofar as Section 6, Article V of the Constitution authorizes the Legislature to reconstitute judicial circuits "according to the last census authorized by law" and designate the places of residence of additional circuit judges, the interim afforded by Section 8, Article X is operative.
If such licenses are issued and appointments are made according to existing population classifications prior to the Legislature having opportunity to make any changes, improvements, or reforms, vested rights and interests in the licensees and appointees will accrue, seriously hampering the Legislature in making any changes in the light of the new census figures.
Gray v. Bryant only held that Section 6(2) of Article V was mandatory and self-executing as to appointments of new circuit judges to existing circuits as then constituted. It did not preclude later legislative changes in the composition of circuits according to later official censuses or designation of the places of residence of additional judges to be appointed. The case does hold that gubernatorial appointments to existing circuits must be made immediately upon the last Federal census becoming official. However, the framers of the 1968 Constitution envisioned an interim period was necessary to allow the Legislature opportunity if it desired to make changes in the composition of the circuits and to designate the places of residence of the additional judges to be appointed, so they modified Gray v. Bryant by including Section 8, Article X in the *156 draft of the new Constitution, deferring the official effectiveness of new Federal censuses insofar as population classifications for Florida were concerned until thirty days after the adjournment of the regular session succeeding the certification of the Federal census.
Of course, after the interim period expires, i.e., thirty days after the final adjournment of the 1971 regular session, Section 6(2), Article V will become operative and the appointments of additional judges must be made as envisioned in Gray v. Bryant to the judicial circuits as then constituted.
For the reasons stated, I believe it is improper to hold that Section 8 of Article X is inoperative insofar as temporarily postponing the effectiveness of populations classifications determined by a new Federal decennial census for the composition of judicial circuits.
Furthermore, I do not consider that the Advisory Opinion to the Governor, Fla., 239 So.2d 247 irrevocably committed us to a course of not reconsidering our advice in the light of more mature adversary induced reflection. We did not mention Section 8 of Article X in the advisory.[2] We did not say that Section 6(1), Article V was so self-executory in effect (if that is possible) that it supersedes later adopted Section 8, Article X. Apparently Section 8, Article X was not considered  or if indeed it was considered sub silentio it was considered so slightly in the advisory as not to be mentioned or discussed.
Our present constitutional duty as I see it is not to persist in failing to give due effect and force to Section 8 of Article X because we may have overlooked it in the Advisory, but in these adversary proceedings to recognize Section 8 for what it plainly purports to do: postpone the operative effect of any Federal decennial census on our laws until the Legislature has opportunity within the interim period prescribed to review the new Federal census and make in advance what changes within its permissible power as it determines appropriate and necessary to the public interest to adjust to the impact of the new population figures.
It is argued by the majority that earlier Section 6 of Article V of the 1885 Constitution somehow supersedes and renders later Section 8 of Article X of the 1968 Constitution meaningless and unnecessary. It is difficult to understand how an older provision of the Constitution (Sec. 6, Art. V), which has nothing whatever to say with reference to when Federal decennial censuses become effective in Florida, can supersede a later constitutional provision (Sec. 8, Art. X), which provides that all Federal decennial censuses without exception shall only become effective thirty days after the adjournment of the regular Florida legislative session "after certification of the [Federal] census."
Even if Section 8 of Article X is meaningless insofar as Section 6(1) and (2) of Article V of the 1885 Constitution is concerned, it nevertheless postpones the operative effect of a Federal census until thirty days after the adjournment of the regular session of the Legislature occurring after the Federal census figures are certified.
In fact, this is the first instance that I have come upon in Florida legal history when an earlier enactment (constitutional or statutory) has been held to supersede a later enactment with which it is in direct conflict in a material aspect.
I am unable, therefore, to understand how Section 6(1) and (2) of Article V is self-executing and automatic the moment when new Federal census figures are certified *157 when we have a new constitutional provision (Section 8, Article X) that says no Federal decennial census shall be effective until thirty days after the adjournment of the next regular session of the Legislature.
The wisdom or policy of Section 8, Article X, whether meaningless or not, taken in relation to Section 6(1) and (2), Article V, is nevertheless a mandatory directive of the people and ought to be honored. See language supportive of this point at the conclusion of this Court's opinion in Williams v. Hartford Accident and Indemnity Company, etc., Fla., 245 So.2d 64 filed December 18, 1970.
DEKLE, Circuit Judge, concurs.
NOTES
[1] MacDonald v. Rehrer, 22 Fla. 198 (1886); State ex rel. Gibbs v. Bloodworth, 134 Fla. 369, 184 So. 1 (1938); 27 Fla.Jur. 80 (1959); State ex rel. Landis v. Valz, 117 Fla. 311, 157 So. 651 (1934); c.f., State ex rel. Ervin v. Jacksonville Expressway Authority, 139 So.2d 135 (Fla. 1962), wherein the Attorney General brought quo warranto to test the power of the Authority to condemn certain air easements. The Authority had adopted a resolution to condemn the easements which completed the exercise of their authority. Implementation of their action remained for the Courts.
[2] Section 4(2) of Article V, Florida Constitution, F.S.A.
[3] Gray v. Bryant, 125 So.2d 846 (1960).
[4] In Re Advisory Opinion to the Governor, 239 So.2d 247 (1970).
[1] Comparison of earlier enacted F.S. sec. 11.031 F.S.A. with Sec. 8 Art. X discloses the latter refers to all population classifications, constitutional or statutory, and not just to general acts of local application confined to population brackets.
[2] The Governor's request for the advisory did not ask our consideration of the applicability of Section 8 Article X State Constitution.