Ernest Ellison Auditor General Tallahassee
QUESTION:
When attempting to determine whether or not a particular general law of local application (so-called population act) was converted to a county ordinance (or school board regulation) by the provisions of Ch. 71-29, Laws of Florida, should one apply the population figures for said county found in the 1960 or the 1970 decennial census?
SUMMARY:
A county, when attempting to determine whether or not a particular general law of local application was repealed or converted to a county ordinance by the provisions of Ch. 71-29, Laws of Florida, and thus authorized to continue as a local enactment by a particular county, should apply the population figures for said county found in the 1960 federal decennial census.
Your question is predicated upon the following factual situation. In 1971, in an effort `to restore the regulation of local government to the constitutionality [sic] recognized modes of enactment . . . [and] to enact additional general legislation to expand the home rule powers of local government,' see s. 1, Ch. 71-29, Laws of Florida, the Legislature repealed a number of general laws of local application, see s. 2 of Ch. 71-29. Section 3(2), (3), and (4) of Ch. 71-29, however, converted those general laws of local application relating to particular counties, municipalities, and school districts, respectively, into ordinances or regulations of the affected local governments, subject to modification or repeal as are other ordinances or regulations.
Section 6 of Ch. 71-29 provides that the act shall take effect on `the twenty-ninth day after the final adjournment of the 1971 regular session . . . .' The next regular session of the Legislature after certification of the 1970 federal decennial census on December 30, 1970, convened on April 6, 1971, and adjourned on June 4, 1971; thus, under the terms of s. 6, Ch. 71-29, the provisions of Ch. 71-29 took effect on July 3, 1971. A question has arisen as to whether the 1960 federal decennial census or the 1970 federal decennial census should be applied to the population acts affected by Ch. 71-29 due to the apparently conflicting provisions contained in s. 8(b), Art. X, State Const., and s. 11.031(3), F. S.
Section 8, Art. X, State Const., provides:
 (a) Each decennial census of the state taken by the United States shall be an official census of the state.
 (b) Each decennial census, for the purpose of classifications based upon population, shall become effective on the thirtieth day after the final adjournment of the regular session of the legislature convened next after certification of the census. (Emphasis supplied.)
Section 8(b) has no counterpart in Florida's earlier constitutions and was taken without amendment from the Constitution Revision Commission's recommendations.
You suggest that s. 11.031(3), F. S., which provides that the federal decennial census shall not be effective for the purpose of affecting acts of the Legislature enacted prior thereto (which apply to counties within a stated population bracket until July 1 of the year following the taking of the census), is applicable to population acts enacted prior to July 1 without regard to their respective effective dates and thus to Ch. 71-29, Laws of Florida, which, notwithstanding that Ch. 71-29 under its express terms is not effective until 29 days after the adjournment of the Legislature, was enacted prior to the July 1 date fixed under s.11.031(3). You suggest that such a result under the statute is in accord with the result following under the constitutional provision. The `enacted prior thereto' contained in s. 11.031(3) refers to population acts enacted before the last census and of necessity means before the federal census became effective. Under the governing rules of statutory construction a statute has no force and becomes effective as a law only when, by its own terms, it takes effect or becomes operative. See Neisel v. Moran,85 So.2d 346, 357 (Fla. 1920), and cases cited therein; cf. C.J.S.Statutes s. 409. The rules regarding statutory construction are also applicable to the construction of constitutions, see State exrel. McKay v. Keller, 191 So. 542 (Fla. 1939); Mugge v. Warnell Lumber Veneer Co., 50 So. 645 (Fla. 1909). Thus, by virtue of s. 8(b), the 1970 federal census would not become effective until 30 days after the adjournment of the regular session, while under the terms of Ch. 71-29, Laws of Florida, Ch. 71-29 became effective the twenty-ninth day after adjournment. Thus, by the time the 1970 census became effective under the terms of s. 8(b), Ch. 71-29 had already converted the `population acts' referred to therein into ordinances and regulations; those population acts, in effect, no longer existed to `ambulate' under the new census. The ordinances and regulations or `enactments' as phrased by s. 3(5), Ch. 71-29, which were created pursuant to s. 3(2), (3), and (4), Ch. 71-29, were authorized to conflict with the general laws of the state to the extent authorized on January 1, 1971. No contract, license, franchise, privilege, or trust agreement in effect under any of the repealed acts was to be affected by such repeals. Section 4, Ch. 71-29. See AGO 071-299, in which this office held that the provisions of s. 30.45, F. S., a general law containing population classification, became applicable to the sheriff of Broward County by application of the 1970 federal decennial census on thethirtieth day following adjournment of the 1971 regular session of the Legislature on June 4, 1971; and AGO 073-471, in which this office considered the applicability of the 1970 federal decennial census to Ch. 71-29, stating that the 1970 federal census did not become effective until the thirtieth day after the final adjournment of the 1971 legislative session while Ch. 71-29 became effective one day earlier on the twenty-ninth day; thus the population figures of the 1960 decennial census would control. Neither AGO 071-299 nor *4289 AGO 073-471 treated or considered s.11.031(3), F. S., or the applicability thereof. Section 11.031(3), F. S., however, provides that `[t]he last federal decennial census shall not be effective for the purposes of affecting acts of the legislature enacted prior thereto which apply only to counties of the state within a stated population bracket until July 1 of the year following the taking of such census.' (Emphasis supplied.) Under the terms of the foregoing statute, the 1970 federal decennial census became operative `for the purpose of affecting acts of the legislature (theretofore) enacted' applying `only to counties of the state within a stated population bracket' on July 1, 1971, before the effective date of Ch. 71-29, and thus would be applicable to the governmental units and population acts referred to in Ch. 71-29. See AGO 069-68, p. 92, in which this office concluded that, in light of the language contained in s. 12, Ch. 69-346, Laws of Florida, stating that `[a]ny change in salary caused by application of the 1970 census shall become effective on July 1, 1971, pursuant to section 11.031(3), Florida Statutes, and the salaries specified herein shall not be retrospective,' the salary of a county fee or budget officer authorized by Ch. 145, F. S., remained the same `unless and until it may be increased as a result of a population adjustment effective July 1, 1971, pursuant to s. 11.031(3), F. S.' Chapter 69-346, which did not refer to or apparently consider s. 8(b), Art. X, is presumptively valid and may be ruled invalid only by the courts.
This disparity between the effective dates for the federal decennial census and the acts and governmental agencies which it affects or impacts upon contained in s. 8(b), Art. X, State Const., and s. 11.031(3), F. S., has not been directly considered by the Legislature or the courts. However, until judicially declared unconstitutional, s. 11.031(3), which has not been amended since its enactment in 1959, must be presumed to be valid.See Pickerill v. Schott, 55 So.2d 716, 719 (Fla. 1951) (it is the duty of an officer to observe the law as he found it until in a proper proceeding its constitutionality is judicially passed upon); Evans v. Hillsborough County, 186 So. 193, 196 (Fla. 1938); State ex rel. Gillespie v. Thursby, 139 So. 372, 375 (Fla. 1932); State ex rel. Atlantic Coast Line R. Co. v. State Board of Equalizers, 94 So. 681, 682-683 (Fla. 1922) (officers must obey a law found upon the statute books until in a proper proceeding its constitutionality is judicially passed upon). Cf. State ex rel. Watson v. Kirkman, 27 So.2d 610, 612 (Fla. 1946); see also
footnote by the Division of Statutory Revision which compares s.11.031(3) with s. 8, Art. X, State Const., under s. 11.031, F. S. 1973.
Section 6(a), Art. XII, State Const., provides that `[a]ll laws in effect upon the adoption of this revision, to the extent not inconsistent with it, shall remain in force until they expire by their terms or are repealed.' This subsection is similar to a provision contained in the schedule of the 1885 Constitution. See
s. 2, Art. XVIII, State Const. 1885. Implicit in this provision is the recognition that any statute in effect at the time of the 1968 revision which was inconsistent with its provisions was thereby repealed. This is, however, a matter for judicial determination; the Attorney General's office is not empowered to resolve such matters or to amend or repeal in part or in whole any statute found upon the statute books. See Pickerill v. Schott, supra; State ex rel. Atlantic Coastline R. Co. v. State Board of Equalizers, supra. Implied repeals by later constitutional provisions, however, are not favored. Generally a statute will continue in effect unless it is completely inconsistent with the plain terms of the Constitution and a court will require that in order to produce a repeal by implication, the repugnancy between the statute and the Constitution be obvious or necessary. In re
Advisory Opinion to the Governor, 132 So.2d 163, 169 (Fla. 1961);see City of Tampa v. Birdsong Motors, Inc., 261 So.2d 1, 9-10
(Fla. 1972); Wilson v. Crews, 34 So.2d 114 (Fla. 1948). Cf. Town of Indian River Shores v. Richey, 348 So.2d 1 (Fla. 1977) (repeal of statute by implication is not favored and will be upheld only where irreconcilable conflict shows legislative intent to repeal); Mann v. Goodyear Tire Rubber Co., 300 So.2d 666 (Fla. 1974) (repeal of statute by implication is not favored). The provisions of s. 6(a), Art. XII, State Const., however, appear to be self-executing. See Emhart Corp. v. Brantley, 257 So.2d 273 (3 D.C.A. Fla., 1972), in which the court concluded that s. 708.02, F. S., providing that all real and personal property of a wife is her separate property is inconsistent with the mandate of the 1968 Constitution that there is no distinction between the property rights of married men and women; therefore, the statute was not carried forward under the 1968 Constitution. Moreover, the provisions of s. 8(b), Art. X, State Const., also appear to be self-executing. See State ex rel. Pettigrew v. Kirk,243 So.2d 147, 155 (Fla. 1970), in which Chief Justice Ervin, concurring in part and dissenting in part, stated:
 Population classifications for all purposes as determined by new Federal decennial censuses and as prescribed in the Constitution or in state law are held in abeyance from immediate self-execution by Section 8, Article X until the Legislature has an interim opportunity within the latitudes permitted the Legislature to review the impact of such censuses and determine if modifications or revisions are in order in any particular . . . .
The majority opinion held that the Governor in office at the time of the official certification of the federal census may fill judgeships created by the automatic provisions of the then judicial article of the Constitution (amended by special election March 14, 1972, effective January 1, 1973) notwithstanding s. 8(b), Art. X of the 1968 revised Constitution, since the Legislature did not have the authority to create new judgeships. But it also held that under s. 8(b), Art. X of the 1968 revised Constitution, the State Board of Business Regulation could not issue new alcoholic beverage licenses based upon population increases reflected by the 1970 federal census until 30 days after adjournment of the 1971 regular session of the Legislature since the Legislature had the authority to legislate in this area.
 The Legislature has enacted this provision of law and has the authority to modify it. In the adoption of section 8(b) of Article X, we feel the people of Florida provided the Legislature should have an opportunity to examine the new Federal Census and to enact any new legislation required to protect the public interest before the issuance of new licenses. . . . Because the Legislature has the authority to revise all population acts or to enact new ones at the next regular session, we feel the constitutional provisions of Section 8(b) of Article X apply. [243 So.2d at 150; emphasis supplied.]
Although this office is not empowered to pass upon the validityvel non of s. 11.031, F. S., it appears that s. 11.031(3), insofar as it concerns the effective date of the `last federal decennial statewide census,' is on its face inconsistent, if not in direct conflict, with the effective date for such census set forth in s. 8(b), Art. X, and that s. 6, Art. XII, operating in conjunction with s. 8(b), Art. X, would have the legal effect of repealing that part of s. 11.031 that is inconsistent with s. 8(b), Art. X. See State ex rel. Pettigrew v. Kirk, supra at 154, in which Chief Justice Ervin, concurring in part and dissenting in part, stated that `[t]here are no exceptions to the operation of Section 8, Article X. All classifications based upon population are not subject to new Federal decennial census population figures until they become effective thirty days after the regular legislative session.'
An examination of the legislative history of H.B. 932 (Ch. 71-29, Laws of Florida), indicates that the Legislature considered that s. 8(b), Art. X, would be applicable, and thus the 1960 decennial census would be applied to the population acts referred to in s. 2, Ch. 71-29. See the Report of the House Committee on Community Affairs relating to H.B. 932, House Journal at p. 151, April 13, 1971, which states in pertinent part:
 The impending effectiveness of the 1970 census once again raises the applicability to specific counties of general laws of local application, also known as population acts. Individual legislators have requested the guidance of the Committee . . . on how best to resolve the problems resulting from population changes of various counties, which changes have placed these counties under the provisions of population acts originally intended for other counties.
 . . . Typically, these laws are amended periodically to maintain their applicability to the county or counties originally intended. . . .
 In considering the alternative recommendations which could be made to the House . . . the Committee concludes that the only responsible alternative is to discontinue the use of general laws of local application. Accordingly, such legislation now in effect should be repealed prior to the effectiveness of the 1970 census and any future attempts to utilize this form of legislation should receive unfavorable consideration by the Legislature. . . .
 In order to implement the recommended policy, the Committee proposes the bill hereinbefore identified (HB 932), which provides for repeal of population acts as previously described. . . . And, in order not to disrupt the orderly, ongoing processes of government, it provides for the substance of population acts to have the effect of ordinances until changed locally, which would continue the provisions of such acts, but on the condition subsequent of repeal or modification by the affected local government. (Emphasis supplied.)
See also s. 6, Ch. 71-29, which also reflects the intent that Ch. 71-29 become fully operative before the effective date of the 1970 decennial census by providing that `[i]n the event this act becomes a law subsequent to such date [the twenty-ninth day after final adjournment of the 1971 regular session of the Legislature] it shall be retroactive thereto.' In s. 1 of Ch. 71-29, the Legislature declared that the Constitution and general laws have provided home rule powers to municipalities and counties, except as limited by law, and that general laws of local application (population acts) do not add to these home rule powers. It specifically declared its intent to eliminate such legislation and, by the repeal thereof, to restore the regulation of local government to the constitutionally recognized modes of enactment, and to enact additional general legislation to expand the home rule powers of local government. This declaration of legislative purpose and intent contained in s. 1, Ch. 71-29, as well as the committee reports on H.B. 932 later enacted as Ch. 71-29, and the express language contained in the act that it shall take effect on the twenty-ninth day after final adjournment, and that it shall be retroactive in the event the act takes effect subsequent to that day, manifests the Legislature's intent that Ch. 71-29 was to take effect the day before the 1970 census became effective. See also
Statutory Revision's 1971 Digest of the General Laws, at p. 5, which states that Ch. 71-29 (H.B. 932) repealing listed general laws of local application (population acts) is `[e]ffective on the day prior to the effective date of the 1970 census.' Thus, in the absence of other evidence of legislative intent, it clearly appears that the Legislature intended that all population acts pertaining to counties, municipalities, and school districts which were outstanding at the time of the 1971 session and listed in Ch. 71-29 were to be repealed and converted into ordinances or regulations and continued as local legislative acts of the particular affected local governments, subject to repeal or modification as are other ordinances or regulations, before the 1970 census became effective. This legislative policy implemented by Ch. 71-29, assuming the validity thereof, effectively operated to preclude the ambulation of the enumerated acts under the 1970 census.
In view of the Legislature's intent as manifested in the provisions of Ch. 71-29, Laws of Florida, and as evidenced in the committee report on H.B. 932 (Ch. 71-29) that Ch. 71-29 become fully operational before the effective date of the 1970 decennial census, it appears that the Legislature in effect construed the provisions of s. 8(b), Art. X, State Const., as applicable to, and controlling of, those population acts enumerated in s. 2 of Ch. 71-29, and intended to repeal and convert the same into ordinances or regulations of the affected local governments before the operative effectiveness of the 1970 census, thus preventing the ambulation of any of the listed acts before such time as the 1970 census became effective pursuant to the terms of s. 8(b), Art. X. Insofar as Ch. 71-29 is concerned, such manifest legislative intent is the law and should be effectuated. See, e.g., American Bakeries Co. v. Haines City, 180 So. 524 (Fla. 1938); State v. Sullivan, 116 So. 255 (Fla. 1928); State v. Knight, 124 So. 461
(Fla. 1929); Smith v. Ryan, 39 So.2d 281 (Fla. 1949); Ervin v. Peninsular Telephone Co., 53 So.2d 647, 654 (Fla. 1951). To that end, it may be fairly said that Ch. 71-29 operated to impliedly amend or repeal s. 11.031(3), F. S., so as to conform that statutory provision to s. 8(b), Art. X of the 1968 revised Constitution although such a determination is within the province of the judiciary and not this office.
The foregoing discussion demonstrates the necessity for legislative attention to s. 11.031(3). I would suggest that the Auditor General recommend to the Joint Legislative Auditing Committee that the statute be revised to comport with s. 8(b), Art. X, State Const.
Prepared by:
Joslyn Wilson Assistant Attorney General